UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODNEY WALKER,  CIVIL NO. 08-1412 (RHK/JSM)

    Petitioner,

v.  REPORT AND RECOMMENDATION

DWIGHT FONDREN,

    Respondent.

JANIE S. MAYERON, United States Magistrate Judge.

This matter is before the undersigned Magistrate Judge of the District Court on the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 by federal prisoner Rodney Walker [Docket No. 1]. As a result of a prison disciplinary action taken against him, Petitioner claims he has been deprived of a protected liberty interest without due process of law, in violation of his rights under the Constitution. Petitioner seeks reversal and expungement of the disciplinary action, which resulted in his loss of 13 days good conduct time ("GCT"). Alternatively, Petitioner seeks an order requiring rehearing of his disciplinary proceeding. Respondent has filed a response contending that the Petition should be denied [Docket No. 6]. Petitioner filed an opposition to the response. [Docket No. 7].

The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court concludes that Petitioner's habeas corpus petition should be DENIED, and that this action should be DISMISSED WITH PREJUDICE.

**I.     BACKGROUND**

Petitioner was incarcerated at the Federal Correctional Institution in Sandstone, Minnesota ("FCI-Sandstone") when he filed this action. Declaration of Angela Buege ("Buege Decl."), ¶ 3 [Docket No. 6-1].[1] On October 5, 2000, Petitioner was convicted in the Eastern District of Wisconsin of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and was subsequently sentenced to 180 months, with five years supervised release. Buege Decl., ¶ 3; Attachment A (Public Information Data), p. A-2. Petitioner has a projected release date of August 31, 2013, via good conduct time release. Buege Decl., ¶ 3; Attachment A, p. A-1.

The facts concerning the prison disciplinary proceeding at issue in this action are as follows. On May 22, 2007, Lloyd Sears ("Sears"), Foreman for UNICOR Glove Factory, charged Petitioner by incident report with Conduct Disruptive to Security or Orderly Running of the BOP Facility, Most Like Engaging in Sexual Acts, a violation of BOP policy. Buege Decl., ¶ 5; Attachment B (Incident Report No. 1601618), p. B-1. In the incident report, Sears indicated he observed Petitioner standing in front of the Inmate Clerk's Office window, approximately five feet from a female who had her back to him. Id. Sears stated he saw Petitioner holding and shaking his crotch while leering at the female staff member and inmate clerk. Id. The report further stated that when Petitioner noticed he was being observed, he immediately stopped. Id.

On the same day, the incident report was delivered and read to Petitioner. Buege Decl., ¶ 6. Petitioner was advised of his rights and was asked to make a statement. Id.; Attachment B, p. B-2. Petitioner denied the charge. Buege Decl., ¶ 6,

---

[1]     Petitioner is currently incarcerated at the Federal Correctional Institution in Petersburg, Virginia. [Docket No. 8 (Notice of Change of Address)].

Attachment B, p. B-1. Petitioner explained he was moving a pallet jack, and his pants slipped down, so he pulled them up. Id. He denied touching his crotch and making sexual gestures. Id. Petitioner requested two inmate witnesses provide statements. Buege Decl., ¶ 6; Attachment B, p. B-2. One witness testified he saw Petitioner moving a pallet jack, but did not see Petitioner doing anything else or pull up his pants. Id. The other witness testified: "I did not see anything, I didn't notice him by the office because there is a lot of people moving around all day long." Id.

The staff member who investigated the incident report found the report was justified and referred the matter to the Unit Discipline Committee ("UDC") for further action. Buege Decl., ¶ 7; Attachment B, p. B-2.

On May 23, 2007, Petitioner appeared before the UDC and was advised of his rights. Buege Decl., ¶ 9. At the UDC hearing, Petitioner denied the allegations in the incident report and testified that he was moving a pallet jack of material and he had pulled up his pants, but did not touch his crotch and did not make any sexual gesture. Id. Based on the severity of the charge, the UDC referred the matter to a Discipline Hearing Officer ("DHO"). Id.

On May 23, 2007, Petitioner was provided with three forms, Notice of Advisement of DHO Hearing, Inmate Rights at Disciplinary Hearing, and Notice of Discipline Hearing Before the DHO. Buege Decl., ¶ 10; Attachment C (Notice of Advisement of DHO Hearing, Inmate Rights at Disciplinary Hearing, and Notice of Discipline Hearing Before the DHO). Petitioner requested two inmate witnesses and a staff representative appear at the hearing. Id.; Attachment C, p. C-3.

The DHO hearing was held on May 29, 2007, and Petitioner was advised of his due process rights. Buege Decl., ¶ 11; Attachment D (DHO Packet), p. D-1. Petitioner requested that staff representative, T. Nordstrom, appear. Id. Nordstrom stated at the hearing that it appeared Petitioner had been afforded all of his rights, and Petitioner had not made any requests of him prior to the hearing. Id. Petitioner denied the allegations and testified that on the day of the incident, he was with a pallet pickup, he had to pull up his pants, and that several people were there but did not say or do anything. Buege Decl., ¶ 12; Attachment D, p. D-3. One inmate witness testified that all he saw was Petitioner talking to a staff member and then Petitioner was gone. Id. Another inmate testified that he did not see anything and did not know anything. Id.

The DHO determined that Petitioner committed the prohibited act – i.e. by standing in front of the Inmate Clerk's Office window, approximately five feet from a female staff member who had her back to Petitioner, Petitioner held and shook his crotch while leering at the female staff member and inmate clerk. Buege Decl., ¶ 13; Attachment D, pp. D-2-3. The DHO made this determination based on the reporting employee's statement and also based on the statements of Petitioner and his two witnesses. Id., Attachment D, p. D-3. The DHO stated that he placed more credibility on the statement of Sears, the reporting employee, because he was legally and ethically required to tell the truth, whereas Petitioner had nothing to lose but everything to gain by failing to tell the truth. Id. The DHO also noted that the inmate witnesses did not have anything of value to contribute because they did not acknowledge observing the incident. Id. The DHO sanctioned Petitioner to disallowance of 27 days of GCT and disciplinary segregation of 21 days. Buege Decl., ¶ 14; Attachment D, p. D-3.

The DHO's report was delivered to Petitioner on June 5, 2007, and the DHO advised Petitioner of his appeal rights. Buege Decl., ¶ 16; Attachment D, p. D-4. Petitioner appealed the DHO's decision. Buege Decl., ¶ 17; Attachment E (Administrative Remedy Generalized Retrieval Data Form), p. E-9; Attachment F (Administrative Remedies and Responses), pp. F-1-2. In this appeal, Petitioner stated that Sears had approached him claiming that [Petitioner] was holding [his] crotch while leering at Sear's spouse, Deb Sears. Id.; p. F-1. Citing to BOP Program Statement 5270.07, Petitioner asserted that the DHO did not base 'his decision on the greater weight of the evidence." Id.; p. F-2. He "withheld conflicting evidence by not stating all facts, i.e. that the 'writer' of the incident report was L. Sears and the 'female officer' involved was his spouse, D. Sears."[2] Id. Petitioner further maintained there was present a "concealed conflict of interest in the performance of official duty," and that in violation of BOP Program Statement 3420.09 governing employee conduct, staff cannot "falsify, misstate, exaggerate or conceal material fact in connection with any record, investigation or other proper proceeding."[3] Id.

---

[2] BOP Program Statement 5270.07, Ch. 7, Paragraph 1 (f) states:

> The DHO shall consider all evidence presented at the hearing. The decision of the DHO shall be based on at least some facts, and if there is conflicting evidence, it must be based on the greater weight of the evidence.

[3] BOP Program Statement 3420.09, Attachment A, sets forth a Standard Schedule of Disciplinary Offenses and Penalties for employees of the BOP. Offense No. 32 states the following is an offense:

> Falsification, misstatement, exaggeration or concealment of material fact in connection with employment, promotion, travel voucher, any record, investigation or other proper proceeding.

In response to Petitioner's administrative remedy appeal, the BOP's North Central Regional Office advised Petitioner that a procedural error had been found,[4] and the disciplinary packet was returned to the institution for further review. Buege Decl., ¶ 17; Attachment F, p. F-3. The Regional Office found that the more appropriate Code violation was Insolence, Code #312. Buege Decl., ¶ 17; Attachment G (Memorandum from Michael K. Nalley), p. G-1.

A rehearing before the same DHO was conducted on August 15, 2007, with the charge amended to Insolence to a Staff Member. Buege Decl., ¶ 18; Attachment H (DHO Rehearing Packet), p. H-1. This time Petitioner waived the right to staff representative. Id.; Attachment H, p. H-1. Petitioner testified and denied the charge. Id. Two witnesses testified. Id.; Attachment H, p. H-2. One witness testified, "All I saw was him talking to the staff member and then next thing I know he's gone. I didn't see what happened." Id. The other witness said: "I didn't see anything, I don't know anything about it." Id.

As before, the DHO determined that Petitioner committed the prohibited act – i.e. by standing in front of the Inmate Clerk's Office window, approximately five feet from a female staff member who had her back to Petitioner, Petitioner held and shook his crotch while leering at the female staff member and inmate clerk. Buege Decl., ¶ 19; Attachment H, p. H-2. The DHO made this determination based on the reporting employee's statement and also based on the statements of Petitioner and his two witnesses. Id.; Attachment H, pp. H-3-4. The DHO stated that he placed more credibility on the statement of Sears, the reporting employee, because Sears was

---

[4] The Regional Office did not describe the nature of the procedural error.

legally and ethically required to tell the truth, whereas Petitioner had nothing to lose but everything to gain by failing to tell the truth. Buege Decl., ¶ 19; Attachment H, p. 3. The DHO also noted that the inmate witnesses did not have anything of value to contribute because they did not acknowledge observing the incident, and Petitioner's denial of the charge was an attempt to escape punishment. Id. The DHO sanctioned Petitioner to disallowance of 13 days of GCT and 15 days disciplinary segregation. Buege Decl., ¶ 20; Attachment H, p. H-3. The DHO signed his report on September 6, 2007, advised Petitioner of his appeal rights, and delivered the report to Petitioner on September 7, 2007. Buege Decl., ¶ 22; Attachment H, p. H-4.

Petitioner appealed the DHO's decision to the Regional Office. Buege Decl., ¶¶ 22, 25; Attachment E (Administrative Remedy Generalized Retrieval Data Form), pp. E 10-11; Attachment F (Administrative Remedies and Responses), pp. F-7-9. Petitioner submitted that the DHO still did not base his decision on the greater weight of the evidence as required by BOP Program Statement 5270.07, Ch. 7 (1)(f), because the conflicting evidence showed that "the 'writer' of the incident report was L. Sears and the 'female officer' involved was his spouse, D. Sears." Buege Decl., Attachment F, p. F-8. Petitioner also maintained that his witness statements were not used when both witnesses expressed that they did not see the gesture that Sears claimed Petitioner committed. Id. On this basis, Petitioner claimed that the DHO continued to ignore the scope and purpose of Program Statement 5270.07 by the concealment of facts and not using supporting evidence. Id. Petitioner urged that his due process rights were violated due to procedural errors that still existed – i.e. a concealed conflict of interest in the performance of official duty, and a violation of BOP Program Statement 3420.09

7

prohibiting BOP employees from falsifying, misstating or concealing facts in connection with any record, investigation or other proper proceedings. Id.

The appeal was denied. Buege Decl., ¶¶ 22, 25. In upholding the DHO's decision, the Regional Director responded to Petitioner's claim that a procedural error existed because the writer of the incident report was the affected member's spouse, stating that "the DHO considered all evidence presented at the hearing and the information contained in the Incident Report." Buege Decl., Attachment F, p. F-9. The Director also noted that the DHO had considered the statements provided by Petitioner's witnesses. Id.

The Petitioner then appealed to the Central Office, which received the appeal on November 21, 2007. Buege Decl., Attachment E, p. E-11; Attachment F, p. F-11. Petitioner argued there was no evidence of insolence or that a staff member was involved; therefore, the requirement of some evidence that he committed the Code violation was not met. Buege Decl., Attachment F, p. F-11. Petitioner also raised the issue that the DHO did not disclose that the "writer" of the incident report was Sears and the female officer involved was his spouse. Id. Finally, Petitioner claimed "witness statements were not used for their purpose when both observed Inmate Walker standing where L. Sears said he stood, but neither witness noticed this gesture. . ." Id.

On February 4, 2008, the Central Office denied the appeal. Buege Decl., Attachment F, p. F-12. The Central Office found the DHO's decision was based upon the greater weight of the evidence, as detailed in Section V of the DHO's report and in substantial compliance with BOP Program Statement 5270.07. Id. The Central Office found that the elements of insolence and involvement of a staff member were satisfied

by the comprehensive description of the evidence in the DHO's report. Buege Decl., Attachment F, p. F-12. The Central Office also noted Program Statement 5270.07 requires staff members to report violations of BOP regulations in an incident report, and this requirement does not vary based upon the relationship of the reporting staff member and any other staff member who may be involved in the incident. Id. Furthermore, the Central Office stated a spousal relationship, in and of itself, does not create a conflict. Id. Finally, the Central Office noted that the DHO considered the statements of Petitioner's witnesses, one of whom "didn't see what happened," and the other who "didn't see anything," and the DHO determined the statement of the reporting officer was more credible. Id. The Central Office concluded the disciplinary procedures were substantially followed, each of Petitioner's due process rights were upheld, the greater weight of the evidence supported the DHO's decision, and the sanctions imposed were commensurate with the severity level of the offense. Id.

Petitioner exhausted his administrative remedies prior to commencing this suit. Buege Decl., ¶ 25.

## II.   DISCUSSION

In his Petition, Petitioner contended he was denied due process at the prison disciplinary hearing in violation of the United States Constitution, as set forth Wolff v. McDonnell, 418 U.S. 539 (1974), because Respondent failed to consider the entire record when determining Petitioner was guilty of Insolence Toward Staff. Petition at 7 [Docket No. 1]. Specifically, Petitioner maintained that procedures were not followed, evidence was withheld, and the hearing was not impartial because facts were added to the record. See Memorandum in Support of Petition [Docket No. 1] at 3 ("Pet. Mem.").

In support of these claims, first Petitioner argued the DHO relied completely on the reporting employee's statement, despite the testimony of two inmate witnesses present during the incident who testified that they did not see what Sears, the reporting employee, said took place. Id. at 4. Second, Petitioner contended that the alleged gesture was not made in a disrespectful manner, and the alleged conduct was "unrelated to an Insolence towards staff" because the staff member to whom the alleged gesture was directed did not report the incident. Id. Third, Petitioner argued that conflicting evidence was withheld evidencing a conflict of interest where the DHO failed to disclose that Sear's spouse was the staff member involved in the incident. Id. Fourth, Petitioner submitted that he was entitled to expungement of the disciplinary report due to the failure of the Central Office to timely respond to his appeal to the Central Office. Id. at 5. According to Petitioner, the Central Office was granted an extension of time to respond to his appeal until January 20, 2008, but he did not receive the response until February 4, 2008. Id.

In opposition, Respondent asserted Petitioner was afforded adequate procedural due process, and the record supported the DHO's disciplinary decision. Government Response to Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 at 10, 17 ("Gov't Response") [Docket No. 6]. More specifically, as to Petitioner's suggestion that the DHO's failure to disclose that Sear's spouse was the staff member involved in the incident, Respondent argued that the DHO was not aware of this fact at either the initial hearing or the rehearing. Id. at 12 citing Declaration of Robert Whitehouse, ¶ 3 [Docket No. 6-10]. Respondent also noted that Petitioner himself could have disclosed to the DHO that the target of the alleged misconduct was the spouse of the reporting

employee. Id. at 13 citing Declaration of Todd Nordstrom, ¶ 3 [Docket 6-11]. According to Todd Nordstrom, the staff representative who attended the first hearing with Petitioner, Petitioner had informed Nordstrom prior to this hearing that Petitioner had a personality conflict with Sears and that Sears was upset that Petitioner had been looking at his wife. Nordstrom Decl., ¶ 3. Nordstrom stated that Petitioner did not request Nordstrom speak to any witnesses or raise any issues for Petitioner during the first hearing and Petitioner did not make any requests on Nordstrom for his hearing. Id., ¶ 4. Nordstrom also confirmed that Petitioner did not raise any issues at the first hearing regarding the relationship between Sears, the reporting employee, and his wife, the subject of alleged misconduct. Id. Further, Respondent contended that the alleged conflict premised on the marital relationship between Sears, the reporting employee, and his wife was not relevant to the Petition because the Constitution does not confer on Petitioner any right that certain facts be disclosed, nor does it confer the right to cross-examine the reporting employee. Gov't Response at 13-14.

With respect to Petitioner's claim that the Central Office violated his administrative procedural rights by submitting an untimely response to his appeal, Respondent contended there could be no due process violation where the delay did not prejudice the Petitioner. Gov't Response at 14-16. Respondent also contended the response conformed to 28 C.F.R. § 542.18, which provides that if the inmate does not receive the response in the allotted time for reply, the inmate should consider the absence of a response as a denial. Id. at 16.

Finally, on the merits of the Petition, Respondent contended the DHO's decision must be upheld where, as here, there is "some evidence" in the record to support the decision. Gov't Response at 17-19.

In reply, Petitioner asserted that on appeal of the first hearing decision, he had addressed the issue of the marital relationship of the reporting employee, Sears, to the subject of the report, Sears' wife, and his belief that Sears issued the disciplinary action for personal reasons, and outside his official duties. Opposition to Government Response to Petition for Writ of Habeas Corpus Pursuant to Title 28 U.S.C. § 2241 ("Pet. Reply") at 3 [Docket No. 7]. Petitioner further submitted that on rehearing, because the DHO was provided the disciplinary package and the appellate package, was aware of the conflict between the writer of the incident report and the female staff member involved, but the decision did not reflect this evidence. Id. at 3-4. According to Petitioner, "[a]n employee cannot simply discipline an inmate off [sic] false allegations because of personal feelings." Id. at 3. In sum, Petitioner asserted there was insufficient evidence to support the DHO's decision because the disciplinary action was capricious and retaliatory, and the entire written record, including the appellate package, should have been considered when the DHO made the decision. Id. at 3-4.

A. **DHO's Decision Is Supported By "Some Evidence"**

A prisoner cannot be deprived of good-time credits without being afforded at least some procedural due process protections. Wolff, 418 U.S. at 556. However, a prisoner facing a loss of good-time credits is not entitled to the full panoply of procedural safeguards that attend a criminal prosecution. Id. To satisfy the constitutional requirement under the due process clause of the Fourteenth Amendment, a prison

12

disciplinary action such as a loss of good-time credits must satisfy only the simple procedural requirements prescribed in Wolff: (1) advance written notice of the charges, (2) an opportunity to present witness testimony and other evidence, and (3) a written explanation of the ultimate resolution of the charges. Id. at 563-572. See also Allen v. Reese, 52 Fed. Appx. 7, 8, 2002 WL 31687124 (8th Cir. 2002) (unpublished opinion) (holding that federal prisoner's right to due process was satisfied as he was given (i) written notice of the charges against him; (ii) the right to call witnesses, and (iii) a written report of the DHO's decision), cert denied, 540 U.S. 849 (2003)).

Due process also requires that there must be "some evidence" supporting the disciplinary determination. Superintendent, Mass. Correctional Inst. v. Hill, 472 U.S. 445, 454 (1985); see also Espinoza v. Peterson, 283 F.3d 949, 951-52 (8th Cir.) cert. denied, 537 U.S. 870 (2002) (applying Hill requirements to claim by federal inmate that he was denied due process when he lost 13 days of "good time" credit for fighting with another inmate); Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[w]hen inmates are entitled to due process before being disciplined, they must receive: (1) advance written notice of the charges; (2) an opportunity to present evidence in their defense; (3) a written statement by the fact finder of the reasons for the action; and (4) a decision supported by some evidence in the record.")

The "some evidence" standard is satisfied if:

> 'there was some evidence from which the conclusion of the administrative tribunal could be deduced....' United States ex rel. Vajtauer v. Commissioner of Immigration, [273 U.S. 103, 106 (1927)]. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, <u>the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board</u>.

Hill, 472 U.S. at 455-56 (emphasis added).

According to Hill, the findings of a prison disciplinary authority cannot be overturned even where the supporting evidence "might be characterized as meager," or wholly circumstantial. Id. at 457. "Revocation of good time credits is not comparable to a criminal conviction... [citation omitted], and neither the amount of evidence necessary to support such a conviction... [citation omitted], nor any other standard greater than some evidence applies in this context." Id. at 456. Again, as long as there is at least some evidence to support the arbiter's decision, and the disciplinary action is not wholly insupportable, the requirements of due process are met.

As a preliminary matter, this Court finds that Petitioner was afforded the procedural benefits prescribed by Wolff, and that Petitioner does not dispute that he received advanced written notice of the hearing, or that he had the opportunity to present witnesses or other evidence, and that he was given a written explanation of the DHO's decision. Nevertheless, despite these procedural safeguards, Petitioner has asserted that his due process rights were violated on grounds that the DHO's written explanation of his decision was inadequate, and the decision was not supported by "some evidence." This Court disagrees. The failure of the DHO to cite to the relationship between the reporting employee and the "victim" staff member in his decision, or the alleged personality conflict between Petitioner and the reporting employee, does not negate the decision. More importantly, the DHO's rehearing decision met the standards required by Wolff.

First, Petitioner's challenge to the DHO's decision is based on the assumptions that the DHO was indeed aware of (a) the marital relationship between the reporting

employee, Sears, and the "victim" staff member (Sear's wife) at the time the DHO issued his decision following the rehearing, and (b) the alleged personality conflict between Petitioner and Sears. But there is no evidence in the record to support these assumptions. As to the Sears' marital relationship, what the record shows is that at the first hearing and at the rehearing, no evidence was presented to the DHO to make him aware of this marital relationship. See Whitehouse Decl., ¶ 3. The record further establishes that Petitioner raised the marital relationship between Sears and the victim on appeal after the first hearing, and that the disciplinary packet was returned to the institution for further review. Buege Decl., ¶ 17, Attachment F, p. F-3. But no evidence is before this Court to establish that the disciplinary packet included Petitioner's appeal, or that the DHO was in possession of the appeal.

As for the alleged personality conflict between Petitioner and Sears, there is no mention of this conflict anywhere in the record. To the contrary, the first reference to this conflict is in the Declaration of Tad Nordstrom submitted by Respondent in response to the Petition. To the extent that Petitioner is suggesting that the real reason for the charge against him was a personality conflict with Sears, Petitioner never testified or presented evidence to the DHO that Sears had a personality conflict with Petitioner or that Sears had falsified the charge because of an alleged personality conflict.

Second, even if the DHO was aware of the relationship between Sears and the victim of the alleged sexual gesture by Petitioner, this detail does not lead the Court to conclude that the DHO's decision was not supported by some evidence. As noted by the Central Office in denying Petitioner's last appeal, Program Statement 5270.07

15

requires BOP employees who have witnessed a violation of BOP regulations by an inmate to prepare and submit an incident report. Buege Decl., Attachment F, p. F-12.[5] Violations involving individuals who are related to each other are not exempt from the regulation. In other words, while it is reasonable to believe that Sears, the reporting employee, would be angered because the gesture was directed at his wife, this fact does not necessarily lead to the conclusion that Petitioner was innocent of the alleged misconduct. Sears stated that he witnessed the misconduct, and the DHO indicated that he found Sears more credible than the Petitioner or the inmate witnesses.

Finally, this Court concludes the evidence upon which the DHO based his decision supported a finding that Petitioner engaged in conduct that amounted to insolence towards a staff member. One witness testified, "All I saw was him talking to the staff member and then next thing I know he's gone. I didn't see what happened." Buege Decl., Attachment H, p. H-2. The other witness said he did not see anything, and did not know anything about it. Id. Neither witness testified that the misconduct did not occur. Thus, the DHO was left to believe either Sears, the reporting employee, or Petitioner, the accused inmate. Based on their incentives to lie or tell the truth, the DHO made a credibility determination and chose to place more weight on the report of Sears, and his reasons to be truthful, than the testimony of Petitioner. Whether this Court may

---

[5] BOP Program Statement 5270.07, Ch. 5, Paragraph 1 (a) provides in relevant part:

> The Bureau of Prisons encourages informal resolution (requiring consent of both parties) of incidents involving violations of Bureau regulations. However, when staff witnesses or has a reasonable belief that a violation of Bureau regulations has been committed by an inmate, and when staff considers informal resolution of the incident inappropriate or unsuccessful, staff shall prepare an Incident Report and promptly forward it to the appropriate Lieutenant.

16

have made the same credibility determination is not germane. Similarly, the fact that Sear's wife, the employee at whom the gesture was directed, was not the one to report the incident has no bearing on whether Petitioner was insolent toward her. The point is that the evidence upon which the DHO based his decision – the report of Sears and his incentive to be truthful – constituted "some evidence" to support the decision that Petitioner had engaged in conduct that amount to insolence against a staff member. See Brown v. Frey, 807 F.2d 1407, 1414 (8th Cir. 1986) (stating the relevant question is whether there is any evidence in the record that could support the conclusion reached); Hrbek v. Nix, 12 F.3d 777, 781 (8th Cir. 1993) (disciplinary action may be taken when based only on guard's report). For all of these reasons, Petitioner's challenge to the DHO's decision fails.

### B. The Central Office's Late Response Does Not Entitle Petitioner to Relief

Petitioner also argued he is entitled to expungement of the disciplinary action because the Central Office was late in responding to his appeal. Petitioner did not set out a constitutional basis for this claim, but assuming it too was grounded on the theory that an inmate cannot be deprived of his liberty without due process of law, it is unavailing for two reasons. First, a timely response to an appeal to the Central Office is not constitutionally protected. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (finding in a Bivens-type complaint against the case manager coordinator and warden of Federal Medical Center in Rochester, Minnesota, that federal regulations providing for administrative remedy procedure do not create a liberty interest in access to that procedure) (per curiam)) (citing to Azeez v. DeRobertis, 568 F.Supp. 8, 10 (D.C. Ill., 1982)); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("As other circuits have

17

recognized, there is no constitutional right to participate in grievance proceedings".) (citing to Flick, 932 F.2d at 729); Azeez, 568 F.Supp. at 10 (rejecting plaintiff's contention in a § 1983 action that defendants violated his due process rights and finding prison grievance procedure which entitled inmates to present their complaints to the prison officials, was "a procedural right only, it does not confer any substantive right upon the inmates. Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the fourteenth amendment."); Rojas v. Driver, No. 5:06CV88, 2007 WL 2789471, *4 (N.D. W.Va. September 24, 2007) (finding ''the Constitution creates no entitlement to grievance procedures...." and prisoner is "constitutionally entitled to the procedures enumerated in Wolff and no more") (citation omitted) aff'd, 267 Fed. Appx. 302, 2008 WL 553108 (4th Cir. 2008).

Further, as Respondent noted, even if the failure of the Central Office to timely respond to his appeal triggered protections under the due process clause, Petitioner can show no prejudice by the late response. Although due process is flexible and the protections afforded by due process are dependent on a given set of circumstances, Morrissey v. Brewer, 408 U.S. 471, 481 (1972), due process claims generally require either that the particular conduct is inherently prejudicial, or that the denial of due process caused actual or identifiable prejudice. See Estes v. State of Texas, 381 U.S. 532, 542-43 (1965) ("It is true that in most cases involving claims of due process deprivations we require a showing of identifiable prejudice to the accused. Nevertheless, at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process."); U.S. v.

King, 593 F.2d 269, 271 (7th Cir. 1979) ("Thus Marion[6] makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused.") (quoting United States v. Lovasco, 431 U.S. 783, 790 (1977); U.S. v. Ray, --- F.3d ---, 2009 WL 2616247 at *12 (2d Cir. Aug. 27, 2009) (showing of prejudice is required to prove a due process violation as a result of a sentencing delay.)

Here, Petitioner received a denial of his appeal fifteen days late. However the regulations governing inmate grievances and appeals expressly address the consequences of an untimely response by the Central Office – an untimely response is deemed a denial of the appeal. See 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level.") Thus, whether Petitioner's appeal was denied in substance by the Central Office or by the failure of the Central Office to timely respond to the appeal, the outcome was the same – it was denied. Petitioner cannot establish prejudice where the decision is the same whether timely or not, and no other harm was suffered by the delay.

In sum, the Court finds that the record in this case provides at least some evidence to support the DHO's determination that Petitioner committed the prohibited act of Insolence Toward Staff (Code 312), and the DHO provided an adequate written decision in this matter. See Goff v. Dailey, 991 F.2d 1437, 1442 (8th Cir. 1993) (the outcome of prisoner disciplinary proceedings will be upheld by the federal courts if it is

---

[6] United States v. Marion, 404 U.S. 307 (1971).

supported by some evidence in the record), cert. denied, 510 U.S. 997 (1993). Furthermore, the Central Office's delay in responding to Petitioner's appeal did not violate his right to due process. The DHO's decision in this matter should not be overturned by a writ of habeas corpus.[7]

III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [Docket No. 1] be **DENIED** and this action be **DISMISSED WITH PREJUDICE**.

Dated: September 4, 2009

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **September 22, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.

---

[7] As this Court has concluded that Petitioner's constitutional rights were not violated, no evidentiary hearing is necessary in this matter. See Willis v. Ciccone, 506 F.2d 1011, 1019 (8th Cir. 1974) (in constitutional challenge to prison disciplinary action, evidence generally should be received in documentary form without the necessity of an evidentiary hearing.)